UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| In the Matter of: | |
| | |
| Matthews 350 E LaSalle, LLC | Case No. 26-30288-pes |
| *Debtor(s)* | Chapter 11 |
| Commerce Center Development, LLC | |
| *Debtor(s)* | (Jointly Administered) |
| | |
| Redevelopment Commission of the City of South Bend, Indiana, | |
| *Plaintiff*, | |
| | |
| v. | Adv. Pro. No. 26-3011-pes |
| | |
| Commerce Center Development, LLC; Matthews 350 E LaSalle, LLC; DMTM, Inc.; and Matthews LLC, | |
| *Defendants*. | |

## BRIEF IN SUPPORT OF MOTION TO REMAND AND ABSTAIN

The South Bend Redevelopment Commission, Plaintiff in the underlying action

(the "Commission" or "Plaintiff"), submits this Brief in Support of its Motion to Abstain

and Remand.

### I.   SUMMARY OF ARGUMENT

In 2017, the Commission agreed to contribute $5 million toward a development

project (the "Project") undertaken by Debtor/Defendant Commerce Center Development,

LLC ("CCD") on a parcel of land in downtown South Bend ("the Property") owned by CCD. In the agreement ("Development Agreement"), CCD promised to deliver a 10-story mixed-use building with a number of features, including: (a) a grocery store (including a pharmacy), (b) street-level retail space, and (c) a public plaza of approximately 4,000 square feet (including approximately 2,800 square feet in the northeastern corner of the property). CCD also agreed that the development would comply with all zoning and land use laws and ordinances, to submit timely reports (including the number of jobs created), and to use commercially reasonably efforts to minimize disruption during construction. CCD – a single-member LLC owned by David M. Matthews – agreed to not assign its rights and obligations under the development agreement to any third party. Finthe ally, CCD agreed to complete the project by a specific date set by third-party Northern Indiana Regional Development Authority (which had separately agreed to contribute another $5 million to the project), which date was later extended twice to December 31, 2022. (Development Agreement, ECF No. 1-2 at 7-28.)

CCD failed to deliver. By January 2023, the building was not complete, did not have a grocery store (including a pharmacy), did not have street-level retail space or the public plaza promised. CCD failed to submit all of the required reports timely, failed to comply with all zoning and land use laws and ordinances, and failed to use commercially reasonably efforts to minimize disruption during construction, among other breaches.

On January 20, 2023, on behalf of the City and its citizens, the Commission filed a breach-of-contract case, under Indiana law, in the St. Joseph County (Indiana) Superior Court No. 7 ("State Court"). (ECF No. 1-2 at 2-6.) The lawsuit, styled *Redevelopment Commission of the City of South Bend v. Commerce Center Development, et al.*, Cause No. 71D07-2301-PL-000020 (the "State Action") was pending for more than three years at the time CCD filed its Notice of Removal. (*See* ECF No. 1.)

Through the State Action, the Commission learned that affiliates of CCD were directly involved in the Project in various respects and successfully moved to add them as defendants in the State Action over CCD's strenuous objection. (*See* ECF No. 1-5 at 2-460; 1-6 at 2-86.). One of the newly named defendants is Matthews 350 E LaSalle, LLC ("Matthews 350"), who along with CCD, has filed for bankruptcy. The other two newly added defendants, DMTM, Inc. ("DMTM") and Matthews LLC, have not filed for bankruptcy.

By removing a state court lawsuit pending for over three years to this Court, CCD and Matthews 350 essentially seek to afford the protections of bankruptcy to non-debtors DMTM and Matthews LLC. Moreover, they seek to stem the tide of unfavorable rulings against them, hoping that a new court will provide interlocutory relief where none seemed available in State Court. For these improper bases and the factors promulgated at law, the Court should remand the State Action back to the State Court based on either:

1) mandatory abstention under 28 U.S.C. § 1334(c)(2); or 2) equitable remand under 28 U.S.C. § 1452(b).

## II.  SUMMARY OF STATE ACTION AND PROCEDURAL BACKGROUND

The Commission filed suit against CCD on January 20, 2023. (ECF No. 1-2 at 2.) In response, CCD filed a Motion to Dismiss, alleging that the $7.5 million liquidated damages provision in the Development Agreement was unenforceable under Indiana's strict requirements that such provisions fairly approximate actual damages and not serve as a penalty. The Commission filed an Amended Complaint to add specific factual allegations supporting the fairness of the damages clause.  CCD renewed its Motion to Dismiss. After extensive briefing and in-person hearing, the State Court denied CCD's motion on October 26, 2023, in a single-spaced three-page order concluding that "fact intensive inquiries" needed to be resolved before the court could determine the issue. (ECF No. 1-2 at 170-72.)

The next issue to arise was a discovery dispute between the Commission and CCD, which resulted in the Commission filing a motion to compel on August 16, 2024. (ECF No. 1-2 at 204-220.) The State Court granted the motion, without a hearing, on August 28, 2024. (ECF No. 1-2 at 252.)

After CCD's failure to comply with that order, the Commission filed a renewed motion to compel on November 15, 2024. (ECF No. 1-2 at 253-57.) Once the motion was

briefed and the parties argued the matter on January 7, 2025, the Court granted the motion, once again in favor of the Commission. (ECF No. 1-2 at 289-291.)

Later, on July 10, 2025, the Commission then asked the Court to issue a rule to show cause for CCD's failure to comply with the Court's prior orders regarding discovery. (ECF No. 1-2 at 320-335.) After more extensive briefing on the dispute, which concerned CCD's failure to disclose information about how many jobs were actually created by the Project, the parties appeared and participated in another in-person hearing before the Court on August 27, 2025. (ECF No. 1-4 at 4.)[1] On September 4, 2025 the State Court issued another order compelling CCD to provide discovery responses. (ECF No. 1-4 at 4-6.)

CCD then commenced a dispute as to the form of the proposed order from the above hearing, despite that the order was supposed to reflect an agreement made in open court. (ECF No. 1-4 at 11-23; 101.) The Court ultimately overruled CCD's objections and entered a third order compelling CCD to provide discovery responses. (ECF No. 1-4 at 101-03.)

In the course of discovery over this three-year span, the Commission learned the following relevant facts:

---

[1] Docket entry ECF No. 1-3 is 287 pages and is dedicated to the Rule to Show Cause and related motions that emanated from the dispute.

- In October 2019, CCD subdivided the Developer Property and transferred the parcel upon which it was developing the Project to Matthews 350 through a 99-year Ground Lease for a total sum of $99.00;

- As a result, the responsibility to execute the Project Plan shifted in part from CCD to Matthews 350;

- CCD assigned to DMTM responsibility to design the building, manage construction of the building, and manage operation of the building, which are obligations of CCD under the Development Agreement at issue;

- CCD also assigned to and/or operated through Matthews LLC, as alter ego, other rights and obligations under the Development Agreement;

- Matthews, LLC has publicly marketed itself as the owner and landlord of the Property through signs and banners on the Property and other media; and

- CCD and Matthews LLC are controlled as a single enterprise through their interrelationship.

(*See* ECF No. 1-6 at 82-83.)

As a result, the Commission moved for leave to file a Second Amended Complaint, adding, *inter alia*, 350 Matthews, DMTM, and Matthews LLC as new defendants. (*See* ECF No. 1-5 at 2-9.).  After another round of extensive briefing and another in-person hearing, the State Court granted the Commission's motion. (ECF Nos. 1-5 at 297; 1-6 at 87-91.) The Commission filed the Second Amended Complaint on February 10, 2026. (ECF No. 1-6 at 92.)

Once served, the newly added defendants filed their appearances and notices of automatic thirty-day extensions of time. (ECF No. 1-6 at 145-158.) On the same day these

were filed, March 10, 2026, CCD and Matthews filed a notice that they had filed for

Chapter 11 bankruptcy. (ECF No. 106 at 159-165.)

Debtors CCD and Matthews 350 filed their Notice of Removal of the State Action

on April 3, 2026. (ECF No. 1.)

### III.  ARGUMENT

This case should be remanded to the State Court (Superior Court No. 7 of St.

Joseph County, Indiana) based on either mandatory abstention under 28 U.S.C. §

1334(c)(2), or permissive abstention / equitable remand under 28 U.S.C. § 1334(c)(1) and

28 U.S.C. § 1452(b). In addition to the statutory factors discussed below, the lengthy

history of the State Action demonstrates that the Debtors and non-debtor Defendants

removed this action in order to escape the State Court forum, where they have faced

numerous adverse rulings.

### A.  Section 1334(c)(2) Requirements for Mandatory Abstention

"Mandatory abstention principles address circumstances under which a

bankruptcy court is required to decline the exercise of subject matter jurisdiction over a

dispute, notwithstanding its existence under §1334(b)." *In re Delta Petroleum Corp.*, No.

11-14006, 2013 Bankr. LEXIS 2968, at *12-13 (Bankr. E.D. Tex. July 24, 2013). Thus, any

federal court must abstain from hearing state law claims if: (1) the motion to abstain is

timely; (2) the action is based upon a state law claim or cause of action; (3) an action has

been commenced in state court; (4) the action can be timely adjudicated in state court; (5)

there is no independent basis for federal jurisdiction which would have permitted the action to have been commenced in federal court absent bankruptcy; and (6) the matter before the court is a non-core proceeding. *See LaRoche Indus., Inc. v. Orica Nitrogen, L.L.P. (In re LaRoche Indus., Inc.)*, 312 B.R. 249, 252-53 (Bankr. D. Del. 2004).

1. ***The Motion to Abstain Is Timely.***

This motion is filed less than 30 days after the Notice of Removal, which was filed on April 3, 2026. The statute makes no explicit requirement of time, only that the motion must be timely. *See* 28 U.S.C. § 1334(c)(2). A party acts in a timely fashion when he or she moves as soon as possible after he or she should have learned the grounds for such a motion. *In re NOVAK*, 116 B.R. 626, 628 (N.D. Ill.1990). *See also* 28 U.S.C. § 1447(c) (setting forth general thirty-day deadline for motions to remand). Local Rule 200-1(C) also only requires consent to the Bankruptcy Court to determine matters occur on or before "the time of pre-trial."

Here, the motion has been brought before the Court in a timely manner. Moreover, the undersigned counsel for the Commission were each out of the office for most of the week of April 6-10, 2026.

2. ***The State Action Is Based Entirely on State Law and***
3. ***The State Action Was Commenced in State Court.***

The State Action is one-count claim for breach of contract under Indiana law. Furthermore, the main theories of liability as to each newly added defendants are:

assignment of contractual obligations as to DMTM; alter-ego and assignment as to Matthews LLC; and joint/single enterprise as to 350 Matthews. All of these claims are based on Indiana law and would apply Indiana law even at the federal level. See, *Rodgers-Rouzier v. Am. Queen Steamboat Operating Co., LLC*, 104 F.4th 978, 987 (7th Cir. 2024) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

**4.  *This Action Can be Timely Adjudicated in State Court.***

Because the standard for what constitutes "timely adjudication" is generally uncertain, this issue is one of judicial discretion. *Georgou v. Fritzshall (In re Georgou)*, 157 B.R. 847, 851 (N.D. Ill. 1993) (citing 1 Collier on Bankruptcy P 3.01 at 3-78 (15th ed. 1984)). Courts discussing this issue often examine the following factors: (1) backlog of the state court's calendar; (2) status of the bankruptcy proceeding; (3) complexity of the issues presented; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate. *In re Morfin*, No. 04-65142, 2005 Bankr. LEXIS 1830, at *18 (Bankr. N.D. Ind. May 20, 2005) (citing *In re DeLorean Motor*, 49 B.R. 900, 911 (Bankr. E.D. Mich. 1985).

As referenced earlier, the State Action has been pending for over three years. In that span of time, the State Court has ruled on numerous disputes between the parties, conducted at least four contested hearings, and, on August 27, 2025, had set numerous case management deadlines as well as a trial date less than six months from now:

**ORDER ON CASE MANAGEMENT**

Hearing had on August 27, 2025.   Present were **James Lewis** counsel for plaintiff and **Graham Young,** counsel for defendant.

**Bench Trial** set as 2nd setting or **Tues.-Thurs., October 20-22, 2026 at 9:00am.**

Final Pretrial Conference (with parties) set for **Tues., Oct. 6, 2026 at 9:30am.**

Telephonic Pretrial Conference (Attorney-Only) set for **Tues., July 28, 2026 at 1:30pm.**

**Call: 978-990-5000   Access Code:   390167**

Mediation deadline is **Fri., August 21, 2026.** Parties will agree to a mediator.

**Other deadlines:**

Plaintiff to disclose experts: **Thur., May 21, 2026.**

Defendant to disclose experts: **Thur., June 18, 2026.**

Each party to submit preliminary pretrial statement: **Tues., July 14, 2026.**

Discovery completion: **Tues. July 21, 2026.**

Dispositive Motions: **Tues., August 4, 2026.**

Parties exchange list of witnesses, exhibits, contentions: **Tues., Sept. 15, 2026.**

Plaintiff submit JOINT pretrial order: **Tues., Sept. 22, 2026**

Each party submit motions *in limine*: **Tues., Sept. 29, 2026.**

(ECF No. 1-4 at 2). Having absorbed many pages of briefing and hours of argument about the case, the State Court has absorbed the issues presented. Removing the case at this juncture would force a new court to examine issues that have been litigated and possibly be asked to revisit decisions by the State Court since those orders were interlocutory. This would clearly prolong the administration of the estate, given that a trial on the merits appears necessary to resolve this dispute. There is no evidence of a backlog of cases in Superior Court No.7.[2] To date, the State Court has expeditiously heard the parties in this case and has equally issued quick and thorough rulings. As such, it is evident this matter would be timely adjudicated in State Court.

---

[2] CCD bears the burden of proof on this. *See, e.g., N.Y. Commer. Bank v. Pullo,* No. 12-02052 (BRL), 2013 Bankr. LEXIS 520, at *12-14 (Bankr. S.D.N.Y. Feb. 7, 2013) ("the party challenging abstention must show, through 'actual evidence,' that 'the backlog of cases is significantly different' in the two relevant tribunals.").

**5.** *No Independent Basis for Federal Jurisdiction Exists.*

Nowhere in the Notice of Removal or attached documents from the State Action are federal law or jurisdiction invoked, other than reference to the bankruptcy itself. There is plainly no basis for federal question jurisdiction under 28 U.S.C. § 1331.

Furthermore, there is no basis for diversity jurisdiction under 28 U.S.C. § 1332. Political subdivisions, such as cities and municipalities, are considered citizens of their respective states for purposes of determining diversity jurisdiction. *See City of Chi. v. Smollett*, 421 F. Supp. 3d 565, 570 (N.D. Ill. 2019). As to CCD, it is an Indiana limited liability company with Mr. David M. Matthews as its member. (ECF No. 1-6 at 93.) Matthews 350 is an Indiana limited liability company with Mr. Matthews as its member. (*Id*.) DMTM is an Indiana corporation (ECF No. 1-6 at 94.) and Matthews LLC is an Indiana limited liability company whose membership is not alleged in the record, but whose name and affiliation would strongly suggest Mr. Matthews is similarly a member. (*Id*.) Under these facts, the citizenship of the parties would not suffice to create diversity jurisdiction. Therefore, no independent basis for federal jurisdiction exists.

**6.** *The State Action Is a Non-Core Proceeding.*

A bankruptcy court has jurisdiction to hear an adversary proceeding under two circumstances: (1) the proceeding is a core matter pursuant to 28 U.S.C. § 157, or (2) the proceeding lies within the specific bankruptcy jurisdiction set out in 28 U.S.C. § 1334(b). *Barnett v. Stern*, 909 F.2d 973, 979 (7th Cir. 1990); *Diamond Mortgage Corp. of Illinois*, 913

F.2d at 1238-39; *In re Markos Gurnee P'ship*, 182 B.R. 211, 220 (Bankr. N.D. Ill. 1995). A proceeding is "core" under 28 U.SC. § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. *Southmark Corp. v. Coopers & Lybrand (in Re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999). The bankruptcy jurisdiction of § 1334(b) includes all proceedings "arising under" Title 11, all proceedings "arising in" a case under Title 11, and all proceedings "related to" a case under Title 11. 28 U.S.C. § 1334(b). "Related to" jurisdiction encompasses contract and tort claims by and against the debtor, and through 28 U.S.C. § 1334(b) these claims are taken from an ordinary stand-alone context and are brought to the bankruptcy court for the primary purpose of determining all claims in the same forum. *Matter of FedPak Systems, Inc.*, 80 F.3d 207, 214 (7th Cir. 1996). As a secondary purpose, "related to" jurisdiction brings to the bankruptcy court all actions that may affect the amount of property of the estate, even if the debtor is not a party to those actions. *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994).

Debtors appear to concede that this is a non-core proceeding. They make no allegation in their Notice of Removal that this is a core proceeding and instead refer to the State Action as "related" to the Bankruptcy case. (ECF No. 1 at ¶¶ 14, 15, and 18.) Furthermore, there are no allegations in the Second Amended Complaint in the State Action which would create a core proceeding. Consequently, the State Action is a non-core proceeding.

This matter meets all criteria to require abstention under 28 U.S.C. § 1334(c)(2). Therefore, the matter must be so remanded. Alternatively, even if the Court finds that mandatory abstention does not apply, the Court should still equitably remand the State Action.

**B. Equitable Remand Is Likewise Appropriate.**

Even if the mandatory abstention statute did not require remand of this case, this Court should decline to exercise jurisdiction and remand based on equitable remand under 28 U.S.C. § 1452(b).

The purposes of remand and abstention are similar. *In re IO at Tech Ridge LP*, 646 B.R. 884, 889 (Bankr. W.D. Tex. 2018). The Seventh Circuit has identified twelve relevant factors a court should consider when deciding whether to abstain:

1. The effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;
2. The extent to which state law issues predominate over bankruptcy issues;
3. The difficulty or unsettled nature of the applicable law;
4. The presence of a related proceeding commenced in state court or other nonbankruptcy court;
5. The jurisdictional basis, if any, other than 28 U.S.C. § 1334;
6. The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
7. The substance rather than form of an asserted "core" proceeding;

8.  The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9.  The burden of [the bankruptcy court's] docket;

10. The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11. The existence of a right to a jury trial; and

12. The presence in the proceeding of nondebtor parties.

*Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) (citation omitted). A court must apply these factors flexibly, and "no one factor is necessarily determinative." *Pio v. Gen. Nutrition Cos.*, No. 06 C 2140, 2006 U.S. Dist. LEXIS 79793, at *12-13 (N.D. Ill. Oct. 31, 2006) (quoting *Chicago Milwaukee*, 6 F.3d at 1189). Ultimately, though, the court may remand the matter "on any equitable ground." 28 U.S.C. § 1452(a). The moving party bears the burden of demonstrating that remand is proper. *Brizzolara v. Fisher Pen Co.*, 158 B.R. 761, 769 (Bankr. N.D. Ill. 1993).

### 1. *There will be little to no effect on the efficient administration of the estate if a Court recommends abstention.*

The State Court has efficiently managed this case for over three years. It was prepared to take this matter to trial and has already issued several rulings to resolve a myriad of disputes in this case. It is, to put it mildly, quite familiar with the litigation posture of the case as well as the prior conduct and representations of the parties.

Remanding the matter back to State Court will aid in the efficient administration of the estate, since the Court can pick up where it left off and set a new trial date.

In addition, there are other courts who have found that non-core cases lengthen the time to adjudicate matters. *See e.g., Hays v. Cummins (In re Cummins)*, 174 B.R. 1005, 1007 (Bankr. W.D. Ark. 1994) ("Inasmuch as these matters are non-core, the requirements of 28 U.S.C. § 157 further lengthen the proceeding because this Court would be limited to making proposed findings to the district court which then considers objections. Such a procedure interferes with the dockets of two courts").

This factor weighs in favor of remand.

### 2. *State law issues entirely predominate over bankruptcy issues.*

There are no bankruptcy issues in the State Action. Moreover, the record in the State Action makes clear that the debtors dispute liability and damages in the case, both state law issues, and those issues will need to be resolved in order to administer the bankruptcy estate. This factor weighs in favor of remand.

### 3. *The difficulty or unsettled nature of the applicable law.*

This case requires a court to interpret the Development Agreement and apply it to the facts, under Indiana law. The only difficult area of substantive Indiana law concerns whether the liquidated damages provision is unenforceable as a penalty. The State Court rejected CCD's argument on this issue under Indiana Rule of Trial Procedure ("Trial Rule") 12, but it could be revisited under Trial Rule 56 (before trial) or Trial Rule 50 (at

trial). In either case, the State Court will already be familiar with the relevant cases and arguments, having studied them carefully in the context of the language of the Development Agreement. Thus, this factor slightly weighs in favor of remand.

### 4. *The State Action is a related proceeding which commenced in state court.*

As previously demonstrated under the mandatory abstention elements, the State Action was long ago commenced in state court and is a "related to" proceeding. This factor weighs in favor of remand.

### 5. *The Court has no jurisdictional basis other than 28 U.S.C. § 1334.*

A removed state court lawsuit must be remanded if a federal district court could not have asserted original jurisdiction had the state court action initially been brought in federal court. *See* 28 U.S.C. § 1441(a) and (b); *Foxmeyer Health Corp. v. McKesson Corp. (In re Foxmeyer Corp.)*, 230 B.R. 791, 794 (Bankr. N.D. Tex. 1998). Debtors cite 28 U.S.C. § 1441(a) (original jurisdiction) as a basis for removal (ECF No. 1 at ¶¶ 9, 16, 18) but do not explain its application to this case. As the underlying claims and above arguments demonstrate, there was no original jurisdiction in the State Action in that it could not have been brought in federal court at the outset, either in diversity or federal question. The citation to § 1441(a), as well as the assertion that original jurisdiction existed, appear to have been made in error.

Because there is no jurisdictional basis for removal outside of 28 U.S.C. § 1334, this factor weighs in favor of remand.

**6.** *The degree of relatedness or remoteness of the proceeding to the main bankruptcy case is likely a neutral factor.*

Debtors contend that their inability to obtain refinancing from their largest creditor, and thus their need to file for bankruptcy protection, was somehow caused by the State Action. (ECF No. 1 at § 10.) While this seems unlikely given that the Debtors plead insolvency without assigning any value to the Commission's claim, the Commission does not question there is some relatedness in the two proceedings.

Still, the stated need for removal by Debtors rings hollow. After all, if Debtors were truly concerned that all matters affecting the estate should be removed, then why did Debtors remove the State Action but not remove the KeyBank foreclosure proceeding in St. Joseph Superior Court No. 6 (Cause No. 71D06-2504-MF-000131) (the "KeyBank Action"), wherein both Debtors are parties?

Thus, while there is relatedness between the State Action and the Chapter 11 bankruptcy, the degree of that relatedness is ebbed by the fact that Debtors have refused to remove the case involving, by their admission, their largest creditor. Based on the foregoing, this should therefore be considered a neutral factor.

**7.** *There is no substance of an asserted "core" proceeding to consider.*

Debtors have not maintained this is a core proceeding, and it is not a core proceeding under the non-exhaustive list found in 28 U.S.C. § 157(b)(2). Furthermore, "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy

case." *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990) (quotation omitted). This action arose outside the context of a bankruptcy action and thus does not meet any definition of a core proceeding. Because the State Action is not a core proceeding, this factor weighs in favor of remand.

8. *It is entirely feasible to sever state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court.*

In this case, the state law claims stand alone and leave enforcement of the judgment(s) to the bankruptcy court. The State Action has already been set for trial once, the parties were about to commence depositions when the bankruptcy was filed, and most of the written discovery disputes had been resolved by the State Court. Indeed, there is ample evidence in the record to show the State Court is well suited to shepherd the State Action through judgment and to do so expeditiously. Because of this feasibility, this factor weighs in favor of remand.

9. *The burden of [the bankruptcy court's] docket is the only factor that does not favor remand.*

In another case analyzing equitable remand in 2025, this Court indicated it would not be burdened hearing a state law case, albeit a small case in the form of an eviction proceeding. *See In re Maxie*, No. 24-31402-pes, 2025 LX 239622, at *11 (Bankr. N.D. Ind. July 22, 2025). Assuming the same would hold true in this matter, almost one year later, it appears this factor would not weigh in favor of remand.

**10.** *There is a substantial likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by Debtors.*

Several facts suggest Debtors are forum shopping by their removal of the State Action. First, CCD faced numerous adverse rulings in State Court prior to filing for Bankruptcy. Its motion to dismiss was denied, it was compelled to provide discovery responses and sanctioned, and then it unsuccessfully challenged the Commission's motion for leave to amend its complaint. Indeed, the record appears devoid of one non-routine order in CCD's favor. Given the string of adverse rulings over three years, combined with the prospect of discovering the inner workings of the CCD's related entities, it is not unreasonable to infer that CCD and its affiliates wanted a way to get the State Action out of the State Court.[3]

Second, and relatedly, removal would give the bankruptcy court jurisdiction over claims against nondebtors who are patently affiliated with Debtors to the extent they may operate as a joint enterprise.[4] This would effectively give the protections of bankruptcy to those nondebtors without those same parties having to file for bankruptcy, which would subject them to scrutiny of their financial transactions and open insiders to liability

---

[3] Mr. Matthews himself made a public statement recently about the adverse rulings in the State Action and his decision to seek bankruptcy protection for CCD and Matthews 350, stating: "So how do we protect ourselves? Where can we go for help? This is, you know, the county, state courts. So we go to the feds." (Transcript of Statement (attached hereto as Exhibit 1), p. 10, lines 19-21.)

[4] The § 341 Meeting testimony of Mr. Matthews demonstrates the interrelated operations of the entities. (*See* Transcript, Part 2, of 341 Meeting for Matthews 350 (attached hereto as Exhibit 2).)

as recipients of voidable transfers. Thus, the benefit to those nondebtor parties would be twofold.

Third, if the Debtors are concerned about the effect of judgment on the bankruptcy estate, it does not follow that that they chose not to remove the lawsuit by their largest creditor, KeyBank, whose claim is almost seven times the amount sought by the Commission. (*See* KeyBank Complaint, a true and accurate of which is attached hereto as Exhibit 3.) That matter also involves another creditor with potential rights interests in the Property: DW South Bend, LLC. (*Id.*) That Debtors chose to remove only the Commission's lawsuit is highly suggestive that their principal motive was shopping for a more favorable forum.

This factor should weigh heavily in favor of finding for remand.

**11.  *No jury trial has been demanded in the State Action.***

There is no jury trial demanded in the State Action, at this time.[5] Because there is no jury trial, this factor is neutral and not relevant. *See In re Maxie* at *11.

**12.  *Affiliated nondebtor parties are present in the proceedings.***

As previously shown, not only are there nondebtors in this proceedings, but they are essentially piggybacking the debtors into bankruptcy court, enjoying the benefits of

---

[5] The bankruptcy commenced after appearances and extensions of time to answer the Second Amended Complaint were filed, but before responsive pleadings were due. Thus, it is not yet known if the newly added defendants would request a jury trial or file any counterclaim which could cause the commission to demand a jury trial.

the automatic stay while carrying none of the burdens of a debtor. Accordingly, this factor should weigh in favor of remand as well.

**13.** ***Other considerations favor remand.***

In addition to the foregoing, bankruptcy courts have considered other equitable bases such as comity, deference to state courts, and lack of prejudice to removing party, in holding remand should apply. Furthermore, in cases with similar factors, courts have found equitable remand to be the appropriate decision.

In *Good v. Kvaerner U.S., Inc.*, No. 1:03-CV-0476 SEB-VSS, 2003 U.S. Dist. LEXIS 13066 (S.D. Ind. July 25, 2003), the Court found:

> Here, the eight factors . . . strongly weigh in favor of remand to the state court. Because the case at bar involves claims based entirely on state law, and because the claims fall within "related to" jurisdiction, remand will have minimal effects on the administration of the bankruptcy. The state court can adequately address the state law issues based on its expertise. . . . [C]omity and consistency of outcomes are supported by allowing state courts to decide issues that are wholly based on state law. Moreover, the only disadvantage [the Removing Party] will suffer is limited to the shifting forums in which the adjudication of the case has proceeded.

*Id*. at *17-18.

In *Baxter Healthcare Corp. v. Hemex Liquidation Trust*, 132 B.R. 863, 868 (N.D. Ill. 1991), the factors also supported remand. There, the Court found the docket of the state court was less crowded than the district court, and the case had already traveled through two courts, meaning that duplication of judicial resources may have occurred without remand. *Id*. The Court determined that although the uneconomical use of judicial

resources was neutral because there was an uncertain future to the bankruptcy case, remand may nonetheless have been appropriate because the state court could hear the case more expeditiously than the federal court, thus accelerating the bankruptcy case. *Id*. Furthermore, since federal laws were not implicated and only "related to" jurisdiction existed, the Court found the effect of remand on the administration of the bankruptcy estate to be minimal and that the state law claims were better addressed by a state court. *Id*. The court noted that even though the district court can handle the state law claims at bar, remand eased comity concerns and properly utilized the state court expertise with regard to state law claims. *Id*. Finally, the court found that greater consistency of outcomes would exist with similar contract and warranty cases filed in state court if remand was granted, and the consistency limited prejudice to the involuntarily removed party. *Id*.

As in the above cases, the right factors support remand and none favor removal. Remand in this case will similarly ease comity concerns and properly utilize the State Court's resources and expertise in commercial matters. It will address the appearance of forum shopping and the attempt by nondebtors to seek bankruptcy protections without filing for bankruptcy. Moreover, and perhaps most importantly, it will place the case in the hands of the court who has a firm and ongoing understanding of the parties, the claims, the facts, and the applicable Indiana cases and laws.

## IV. CONCLUSION

WHEREFORE Plaintiff, the Redevelopment Commission of the City of South Bend respectfully requests that the Court enter an Order abstaining from the exercise of jurisdiction in this case, remanding the State Action to the St. Joseph County Superior Court No. 7, Indiana, and granting all other just and proper relief.[6]

Dated: May 4, 2026

Respectfully Submitted,

*/s/ Matthew J. Anderson*
Katherine E. Iskin (33679-71)
Matthew J. Anderson (27511-71)
**MAY OBERFELL LORBER LLP**
4100 Edison Lakes Parkway, Suite 100
Mishawaka, IN 46545
Telephone: 574-243-4100
E-mail: kiskin@maylorber.com
          manderson@maylorber.com

## CERTIFICATE OF SERVICE

I certify that on May 4, 2026, a copy of the foregoing was filed electronically with the Clerk using the CM/ECF System, which sent notification of such filing to all counsel of record.

*/s/ Matthew J. Anderson*
Matthew J. Anderson (27511-71)

---

[6] If remanded, the Commission will by separate motion seek to lift the automatic stay for the purpose of adjudicating the State Action in one forum.